UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

|  |  |  |
|---|---|---|
| GEORGE GRIFFITHS, *et al.*, | : | |
| | : | CASE NO. 1:09-cv-1011 |
| Plaintiffs, | : | |
| | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Doc. No. 4] |
| OHIO FARMERS INS. CO., *et al.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendants Ohio Farmers Insurance Co., Westfield Insurance Co., Westfield Earnings Bonus Plan, Ohio Farmers Insurance Co. Group Life Insurance Plan, Ohio Farmers Insurance Co. Employee Benefits Administrative Committee, John Doe 1-10 (Trustees of Westfield Earnings Bonus Plan and Ohio Farmers Insurance Company Group Life Insurance Plan), and Jane Doe 1-10 (Members of Ohio Farmers Insurance Company Benefits Administrative Committee) (collectively, "the Defendants"), move this Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc 4.]

In their Complaint, Plaintiffs George Griffiths and Betty Collett ("the Plaintiffs") seek to represent a class of individuals who retired from Ohio Farmers Insurance Co. ("Ohio Farmers") under a 1999 Special Retirement Benefit. [Doc. 1 at 3.] The Plaintiffs say that Ohio Farmers induced them to retire early by promising certain lifetime profit-sharing and life insurance benefits under the

Case No. 1:09-cv-1011
Gwin, J.

Westfield Earnings Bonus Plan ("WEB Plan") and Ohio Farmers Insurance Co. Life Insurance Plan ("Life Insurance Plan"). [Doc. 1 at 3.]  The Plaintiffs further allege that Ohio Farmers has refused to pay these promised benefits and now seek a declaration of their rights under the plans, an injunction prohibiting the plans' modification or termination, and restitution for unpaid benefits. [Doc. 1 at 3.]

Specifically, the Plaintiffs claim: (1) breach of express contract, (2) breach of a contract enforceable against Ohio Farmers under the doctrine of promissory estoppel, (3) violation of a 1999 Special Retirement Benefit "Plan" actionable under ERISA §502(a)(1)(B) & (a)(3), (4) in the alternative, violation of the "amended" WEB Plan and Life Insurance Plan actionable under ERISA §501(a)(1)(b) & (a)(3), (5) breach of fiduciary duty under ERISA §404, and (6) federal common law estoppel. [Doc. 1 at 8-13.]

In moving to dismiss the Complaint under Rule 12(b)(6), the Defendants say: (1) ERISA preempts Plaintiff's Counts I and II, (2) the 1999 Special Retirement Benefit is not a separate ERISA plan, (3) the 1999 Newsletters did not amend the WEB and Life Insurance Plans and therefore cannot form the basis of an ERISA claim, (4) the Defendants made no misrepresentations as to the 1999 Special Retirement Benefit, the WEB Plan, or the Life Insurance Plan, and (5) the terms of the WEB Plan and Life Insurance Plan are clear and unambiguous and the Plaintiffs could not reasonably rely on any other statements. [Doc. 4-1.]

For the following reasons, this Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion to dismiss.  Specifically, the Court **GRANTS** the motion as to Counts I, II, III & VI.  The Court **DENIES** the motion as to Counts IV & V.  Finally, the Court **GRANTS** the unopposed motion to dismiss all counts as to Defendant Westfield Insurance Companies only.

-2-

Case No. 1:09-cv-1011
Gwin, J.

## I. Legal Standards

In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's legal conclusions as true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1949 (citations removed). Rule 8 does not require "detailed factual allegations, but it requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations and internal quotations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement is not a "probability requirement" but requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.* The Supreme Court has explained the line between possible and plausible: "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations and internal quotations omitted).

Although a court generally confines its review to matters contained in the Complaint, under Rule 10(c), "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Thus, a court presented with a Rule 12(b)(6) motion "may consider the Complaint

Case No. 1:09-cv-1011
Gwin, J.

and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

In this case, the Plaintiffs refer extensively to the "Westfield Earnings Bonus Plan," the "Life Insurance Plan," and the May 1999 and June 1999 Newsletters in their Complaint. Moreover Plaintiffs have attached the Newsletters as well as portions of the Bonus Plan and Life Insurance Plan to the Complaint as exhibits. [Doc. 1-3, 1-4, 1-5 & 1-6.]  In filing their motion to dismiss, the Defendants attached the complete WEB summary plan description ("SPD") and complete Life Insurance SPD. [Doc. 4-2 & 4-3.]  In their Response, the Plaintiffs make no objection to the authenticity of the Defendants' attachments.  Therefore, under Rule 10(c) and *Bassett*, this Court will consider those documents in ruling on the Defendants' motion.

## II.  Background Facts

Plaintiffs George Griffiths and Betty Collett worked for Defendant Ohio Farmers Insurance Company until their retirement at the end of 1999. [Doc. 1 at 4.]  The Plaintiffs say that Ohio Farmers induced them to retire early by promising certain lifetime benefits under two existing benefit plans: the Westfield Earnings Bonus Plan ("WEB Plan") and Ohio Farmers Insurance Co. Life Insurance Plan ("Life Insurance Plan"). [Doc. 1 at 3.]  The Plaintiffs say that Ohio Farmers has refused to pay these benefits as promised. [Doc. 1 at 3.]

Prior to retiring, the Plaintiffs received two newsletters discussing coming changes to Ohio Farmers' retirement benefits. [Doc. 1-5 & 1-6.]  These newsletters also informed the Plaintiffs that if they retired early, they would not be subject to the changes. [Doc. 1 at 4.]

-4-

Case No. 1:09-cv-1011
Gwin, J.

Specifically, the May 1999 Newsletter announced that the company would offer "a Special Retirement Benefit to employees who are 55 years of age with 10 years of service as of December 31, 1999," and that a special portfolio describing the benefit would be sent to eligible employees on June 1, 1999.[1] [Doc. 1-5 at 6.]  In a follow-up June 1999 Newsletter, Ohio Farmers confirmed that it was "offering an enhanced retirement package for a limited time to qualifying groups of employees." [Doc. 1-6 at 5.]

In addition to announcing the Special Benefit, the Newsletters also described how the Plans would change for employees who retired prior to January 1, 2000.  As to the profit-sharing WEB Plan, the May 1999 Newsletter stated: "Employees who retire prior to January 1, 2000, will participate in the Profit Sharing Plan *for their life, and if they die prior to their spouse, their spouse will participate in the Profit Sharing Plan for his or her lifetime*, or if married less than 20 year, for the number of years married." [Doc. 1-5 at 7.] (emphasis added).

Regarding the Life Insurance Plan, the May 1999 Newsletter provided:

Eligible employees who retire before January 1, 2000, will automatically receive life insurance. The amount of the death benefit will continue to be reduced by 5% each year on the 66th through 75th birthday. However, the new plan provides for a minimum benefit of $10,000. Regardless of age, the benefit will not be reduced below $10,000.

[Doc. 1-5 at 6.]  The June 1999 Newsletter similarly stated, "If you retire **before** January 1, 2000, you will receive benefits under the current retiree group life insurance plan . . . However, your benefit will not be reduced below $10,000." [Doc. 1-6 at 6.]

After receiving these representations, both Griffiths and Collett opted to retire early and

---

[1] The Plaintiffs do not discuss the actual terms of this Special Benefit Package in their pleadings nor do the Defendants attach it to their motion to dismiss. Instead, the Plaintiffs attach the signature page of the document signed by Plaintiff Griffiths. [Doc. 1-2.]

Case No. 1:09-cv-1011
Gwin, J.

accept the Special Retirement Benefit. [Doc. 1 at 4.]  In their Complaint, the Plaintiffs say that, by

virtue of the 1999 Newsletters, this Special Retirement Benefit included: (1) a guaranteed specific

death benefit under the Life Insurance Plan, and (2) a vested and guaranteed right to participate in

the profit-sharing WEB Plan. [Doc. 1 at 4-5.]

In 2008, Ohio Farmers reduced the benefits under the Life Insurance Plan and eliminated the

WEB Plan for retirees. [Doc. 1 at 5.]  In response, on May 1, 2009, Plaintiffs sued Ohio Farmers,

the Plans, and the Plan administrators. [Doc. 1.]  The Defendants filed the motion to dismiss on July

21, 2009.

### III. Analysis

The Plaintiffs' claims in this case depend on the existence of five different and potentially

alternative ERISA plans.  First, the Plaintiffs claim that the 1999 Newsletters created a separate plan

guaranteeing them vested life insurance and profit sharing rights.  Second, the Plaintiffs say that the

May 1999 and June 1999 Newsletters amended the existing Life Insurance Plan by making its

benefits permanent.  Third, Plaintiffs say that the May 1999 Newsletter similarly amended the then-

existing profit-sharing WEB Plan by making its benefits permanent.  Finally, the Plaintiffs say the

Defendants breached their fiduciary duties as to both the unamended Life Insurance and WEB Plans.

Given the complex nature of the Plaintiffs' Complaint, the Court analyzes the motion to

dismiss on a count-by-count basis.

*III.A. Counts I & II: Breach of Contract and Promissory Estoppel*

In Count I of their Complaint, the Plaintiffs assert breach of contract against the Defendants.

Although unclear, the Plaintiffs seem to say that the Special Retirement Benefits Election Form and

the 1999 Newsletters created a contract between the parties that Ohio Farmers allegedly breached

Case No. 1:09-cv-1011
Gwin, J.

by reducing and terminating profit-sharing and life insurance benefits. [Doc. 1 at 8.]  In the alternative, in Count II the Plaintiffs say that the doctrine of promissory estoppel prevents the Defendants from denying those lifetime benefits. [Doc. 1 at 9.]  In response, the Defendants say these are state law claims and that the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.*, ("ERISA"), preempts these claims. [Doc. 4-1 at 7-8.]

By its own terms, ERISA broadly preempts state law claims that "relate to" any employee benefit plan. 29 U.S.C. § 1144(a).  As the Sixth Circuit noted in *PONI v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2007), however, "it is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *PONI*, 399 F.3d at 698.

Applying this standard, the Sixth Circuit has held that ERISA preempts claims for employee benefits under  both breach of contract and promissory estoppel theories. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) (holding that ERISA preempted state law contract action asserting improper processing of benefits claim); *Lerner v. Elec. Data Sys. Corp.*, No. 07-1730, 2009 WL 579345, at *3 (6th Cir., March 9, 2009) (holding that breach of contract claim seeking payment of insurance benefits related to ERISA benefit plan and was preempted); *Ramsey v. Formica Corp.*, 398 F.3d 421, 425 (6th Cir. 2005) (holding that ERISA preempts claims of promissory estoppel stemming from reduction in plan benefits to correct for overpayments) *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (Plaintiffs' state law contract claims were "at the very heart of issues within the scope of ERISA's exclusive regulation . . ..").

In this case, the Plaintiffs base their claims for breach of contract and promissory estoppel

Case No. 1:09-cv-1011
Gwin, J.

on the Defendants' alleged failure to provide plan benefits.[2/]  Moreover, based on these claims, the

Plaintiffs seek to prevent changes to the Plans and to recover monies allegedly owed to them under

the terms of the Plans.[3/]   These breach of contract claims, therefore, "relate to" a benefit plan and

are preempted by ERISA.[4/]

Accordingly, this Court **GRANTS** the Defendants' motion to dismiss Counts I & II and

**DISMISSES** those claims with prejudice.

*III.B. Count III: The Special Retirement Benefit Plan*

In Count III of their Complaint, the Plaintiffs say that the 1999 Newsletters created a separate

ERISA plan: the "Special Retirement Employee Benefit Plan."   Further they claim that the

Defendants failed to provide the lifetime benefits promised under this Plan. [Doc. 1 at 9.]   In

response, the Defendants say that the Plaintiffs have failed to plead facts sufficient to show that the

1999 Newsletters created a separate ERISA plan. [Doc. 4-1 at 9-10.]

To determine whether a plan qualifies as an ERISA benefits plan, this Court undertakes a

three-step factual inquiry. *See Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir.

1996). First, the Court applies the "safe harbor" regulations established by the Department of Labor

to determine whether the program is exempt from ERISA.  Second, the Court asks whether from the

circumstances, a reasonable person could ascertain: (1) the intended benefits, (2) a class of

---

[2/] "Defendants . . . have breached their contract to provide fixed WEB and Life Insurance Benefits to the Plaintiffs." [Doc. 1 at 8.]] "Defendant] is, therefore, estopped from (1) denying these promises and (2) from changing or terminating these promised benefits." [Doc. 1 at 9.]

[3/] Plaintiffs seek "a preliminary and permanent injunction prohibiting . . . modification or termination [of the plans]; and restitution . . . of benefits they should have received . . . ." [Doc. 1 at 3.]

[4/] Making the argument for the first time in their memorandum in opposition, the Plaintiffs say that Count I is actually a claim for benefits due under ERISA § 502(a)(1)(B), [Doc. 10 at 1], and that Count II is in fact a claim for promissory estoppel under ERISA. [Doc. 10 at 9.] This argument does not save Counts I and II, however, because any ERISA claims made in those counts are fully encompassed by Counts III, IV & VI.

Case No. 1:09-cv-1011
Gwin, J.

beneficiaries, (3) the source of financing, and (4) the procedures for receiving benefits (the "*Dillingham* factors").  Finally, the Court determines whether the employer established or maintained the plan with the intent of providing benefits to its employees.  *Thompson*, 95 F.3d at 434-35.  Additionally, "The purported plan need not be formal or written to qualify as an ERISA benefit plan, but rather, the court must look to the 'surrounding circumstances' to see if the factors have been met."  *Williams v. WCI Steel Co., Inc.*, 170 F.3d 598, 602-03 (6th Cir. 1999).

Here, the Defendants say that the Plaintiffs have failed to plead any allegations specific to the *Dillingham* factors. [Doc. 4-1 at 10.]

Examining both the 1999 Newsletters and surrounding circumstances, a reasonable person could sufficiently ascertain the intended benefits, the class of beneficiaries, and the source of financing for the plan.  The beneficiaries include those who retired prior to January 1, 2000.  Likewise, the plan benefits arguably include participation in profit-sharing for the employee's life and the life of his or her spouse if the employee dies, together with life insurance benefits under a formula reducing the employee's current benefit by 5 percent for each year from age 65 through 75 but not below $10,000.  The argued plan also describes the source of the funds for these payments—either profits subject to the profit-sharing plan or Ohio Farmers' assets.

Although the issue is close, the Court finds that the Plaintiffs have not, however, adequately pled language or sufficient surrounding circumstances from which a reasonable person could determine the procedures for receiving benefits.  In support of their argument that the Newsletters created a separate ERISA plan, the Plaintiffs rely on *Combs v. Ky. Wesleyan Coll.*, No. 4:05cv139, 2008 WL 145253 (W.D. Ky. Jan. 11, 2008 (holding that individually-negotiated retirement contracts constituted separate ERISA plans but that faculty handbooks did not).  In response, the Defendants

Case No. 1:09-cv-1011
Gwin, J.

cite *Richmond v. NCR Corp.*, 227 F. Supp. 2d 802 (S.D. Ohio 2002) (holding that memorandum, "Q & A Form," and summary of benefits did not constitute separate ERISA plan).  For reasons discussed below, this Court finds the *Richmond* case more persuasive and adopts its holding.

In *Combs*, the district court granted summary judgment to a group of retirees from Kentucky Wesleyan College seeking reinstatement of their health insurance coverage.  Concluding that the plaintiffs' individually-negotiated retirement contracts were also freestanding plans under the *Dillingham* test, the district court found that a reasonable person could ascertain the claims procedures because "upon retirement, the Plaintiff retirees were to receive medical coverage up to the age of 65 and a medicare supplement thereafter." *Combs*, 2008 WL 145253 at *8.

The district court, however, denied the claims of several retirees who relied solely on language in their faculty handbooks. 2008 WL 145253 at *14.  There, the plaintiffs argued that none of the relevant sections of their handbooks restricted the duration of their health care benefits or reserved the right to terminate. 2008 WL 145253 at *14.  Focusing less on the surrounding circumstances and more on the actual contents of the handbooks—which specifically referenced other plan documents—the court held: "[T]he Faculty Handbook is merely a summary of the insurance benefits for which faculty at KWC are eligible.  Thus, under *Sprague*, the Faculty Handbook—an informal plan document—does not override the terms of the [existing] Plan." *Combs*, 2008 WL 145253 at *15.

To the extent this Court finds the *Combs* case persuasive, it supports the Defendants' argument that the Newsletters did not constitute separate plans.  First, in finding a separate plan, the only procedure for receiving benefits the *Combs* district court recognized was that the employee needed to retire and "receive medical coverage."  This procedure is simply too general, however, as

-10-

Case No. 1:09-cv-1011
Gwin, J.

it would arguably exist in almost any alleged plan that also included some benefit to be received.

Cf. *WCI Steel*, 170 F.3d at 604 (rejecting employees' argument that existence of benefit implied procedure for receiving benefit, finding that this argument "read too little into *Dillingham*'s requirement that an administrative scheme be ascertainable").

Moreover, as a factual matter, the successful *Combs* plaintiffs based their claims on formal, individually-negotiated retirement contracts that did not specifically reference any existing or forthcoming plan documents or provide any "disclaimer" language. *See Combs*, 2008 WL 145253 at *2-3. In contrast, the Plaintiffs in this case point to general language in company-wide newsletters that, similar to the faculty handbooks in *Combs*, specify that they are an "overview of what's changing" and that reference a separate "special portfolio" that would provide details on the Special Retirement Benefit Plan. [Doc. 1-5 at 2, 6.]

The Court finds this summary language and the surrounding circumstances more analogous to those held insufficient to establish a separate ERISA plan in *Richmond v. NCR Corp.* In *Richmond*, the plaintiff retirees alleged that three documents provided by their former employer NCR Corporation created separate ERISA plans. 227 F. Supp 2d at 804. First, the retirees relied on a written memorandum that in addition to offering "enhanced" early retirement pension benefits, also provided for participation in health and life insurance plans for employees with ten years of "vesting service." *Id.* Second, the retirees pointed to a "Q & A Form" provided in a summary information packet that answered several questions related to the plans. *Id.* at 805. Finally, the plaintiffs relied on an executive summary of the benefits available under one of the plans. *Id.*

Analyzing each document and the circumstances under the *Dillingham* factors, the court concluded: "Plaintiffs' argument, that these three documents engendered a free-standing ERISA

Case No. 1:09-cv-1011
Gwin, J.

welfare plan, is unreasonable." 227 F. Supp. 2d at 808.  As to the memorandum, the court found that

the document simply did not "discuss[] any details of the coverages, or which party would be

responsible for coverage payments." Id. at 809.  Moreover, the court noted that because the

memorandum referenced existing plans, it would be "impermissible, as a matter of logic and

common sense, to interpret said memorandum as suggesting that NCR intended to establish a welfare

plan separate and distinct from its current retiree health care and life insurance coverages." Id.

(internal quotations omitted).  In fact, the memorandum twice mentioned that the company would

be sending more information and that employees should consult other resources—a planning book,

video presentation, and toll-free hotline—for answers to any questions.  Id. at 805.

With regard to the Q & A Form, the court similarly concluded that its bullet-point summary

of the various plan coverages provided nothing more than a "cursory description of the available

benefits, or the procedures for submitting claims or receiving benefits." 227 F. Supp. 2d at 810.  The

court also noted that one of the terms in the Q & A Form, "takes its meaning from some external

source, and it is that external source . . . which sets forth the parameters of the various retirement

health care coverages under discussion." Id.

Similarly, the court held that the executive summary was exactly that: a summary that

nowhere "describ[ed] the procedures for submitting claims or receiving benefits." Id.  Ultimately,

the court concluded:

> Taken by themselves, nothing in these documents refers to operational and
> administrative responsibilities, and while the [executive summary] gives an overview
> of how costs were to be allocated generally, there is no mention, in any of the
> documents, of how claims were to be processed, payments to be made, or benefits to
> be paid.

227 F. Supp. 2d at 811.

Case No. 1:09-cv-1011
Gwin, J.

The court in *Richmond* was further influenced by the uncertainty that might possibly result if individual statements were said to create new plans. 227 F. Supp. 2d at 811-12; *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) ("For us to sanction informal "plans" . . . would leave the law of employee benefits in a state of uncertainty and would create disincentives for employers to offer benefits in the first place.").

This Court finds the *Richmond* case largely analogous to the instant case.  Against the backdrop of two existing employee benefits plans and a forthcoming special retirement benefit, the Defendants published two newsletters, one of which provided an "overview of benefits changes." [Doc. 1-5 at 1.]  Both newsletters directed employees to outside resources for more information, including upcoming meetings, future newsletters, and most relevant here, a "special portfolio" with details describing the Special Retirement Benefit. *Cf. Elmore v. Cone Mills Corp.*, 23 F.3d 855, 861-62 (4th Cir. 1994) (holding that claim procedures were not clear when "[t]he only way an employee could ascertain the procedures for obtaining benefits would be to refer to the [forthcoming plan documents]").

Moreover, the Newsletters do not contain any language referencing plan administration or claim procedures beyond the phrase, "You will receive benefits . . . ." [Doc. 1-5 at 6, 1-6 at 6.]  Thus, like the documents in *Richmond*, the Newsletters here simply do not satisfy the elements required of an ERISA plan written instrument.

Although this Court recognizes the question is close, it finds that the Plaintiffs have not pled sufficient facts to establish that the 1999 Newsletters created a separate ERISA benefits plan.  Accordingly, the Court **GRANTS** the Defendant's motion to dismiss this claim and **DISMISSES** Count III with prejudice.

Case No. 1:09-cv-1011
Gwin, J.

*III.C. Count IV: Failure to Provide Benefits Due Under the "Amended" Plans*

In Count IV of their Complaint, the Plaintiffs say first that the 1999 Newsletters amended the then-existing WEB and Life Insurance Plans by promising the Plaintiffs lifetime benefits. Second, the Plaintiffs say that Ohio Farmers has failed to provide these promised benefits under both Plans. [Doc. 1 at 10.] Responding, the Defendants say the 1999 Newsletters cannot constitute amendments to the Plans. [Doc. 4-1 at 11-12.] Because the parties agree that Summary Plan Documents for both the WEB Plan and Life Insurance Plan contain reservation of rights clauses, the Plaintiffs can only state a claim if the 1999 Newsletters amended those Plans and guaranteed that the benefits would be "for life."

Under ERISA, a plan administrator may amend a plan only through formal procedures specified in plan documents, 29 U.S.C. § 1102(b)(3), not through informal communications. *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 428 (6th Cir. 2007); *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) (refusing "to sanction informal 'plans' or plan 'amendments'–whether oral or written").

In *Sprague*, a class of former GM employees who took early retirement under various GM programs claimed that "the statements, promises, and representations GM made to them in connection with these programs, and the documents that they signed, created binding bilateral contracts." *Sprague*, 133 F.3d at 402. Specifically, the plaintiffs said that these contracts provided for vesting of the plaintiffs' health care benefits and that the contracts were enforceable as "modifications to the general plan, or as ERISA plans themselves, or as a matter of federal common law." *Id.*

The Sixth Circuit, sitting en banc, rejected the district court's ruling and the employees'

-14-

Case No. 1:09-cv-1011
Gwin, J.

arguments that various writings served as amendments to their existing ERISA plans.[5/]  Specifically, the *Sprague* court noted, "That the defendant's statements were made in writing is irrelevant as they do not profess to be plan amendments." *Sprague*, 133 F.3d at 403 (citing *Borst v. Chevron Corp.*, 36 F.3d 1308, 1323 (5th Cir. 1994) (internal quotations omitted). The court continued, "None of GM's representations suggested that the plan was being modified." *Sprague*, 133 F.3d at 403.

In contrast the 1999 Newsletters do contain some modification language.  For example, the Newsletters repeatedly announce that the benefits "will be changed as follows starting on January 1, 2000," [Doc. 1-5 at 6], or "will be updated as follows." [Doc. 1-6 at 6.]

As to the SPDs, although the documents reserve the right to amend, they do not specify any formal procedures for amendment or limit the form that such an amendment may take. Moreover, unlike the largely individualized or limited communications made by GM in *Sprague*, the Newsletters purport to be widely-disseminated general announcements of changes to the Plans. Although neither of documents explicitly identifies itself as a "Formal Plan Amendment," under the Rule 12(b)(6) standard, this Court finds that the Plaintiffs have stated facts sufficient to support their claim that the 1999 Newsletters constituted amendments to the WEB and Life Insurance Plans.

Therefore, the Court **DENIES** the Defendants' motion to dismiss Count IV.

*III.D. Count V: Breach of Fiduciary Duty*

In Count V of the Complaint, the Plaintiffs say that the Defendants are ERISA fiduciaries and violated their fiduciary duties by giving misleading information regarding "the Plan." [Doc. 1 at 10-11.]  In response, the Defendants say that they made no misrepresentations as to the 1999 Special

---

[5/]The Sixth Circuit described the writings as: "documents evincing [the employees'] acceptance of the terms of the particular program under which they were retiring," "written representations about the health care benefits available to early retirees," "documents summarizing applicable retirement benefits," and "individualized letters about early retirement programs." *Sprague*, 133 F.3d at 394-95.

Case No. 1:09-cv-1011
Gwin, J.

Benefits Retirement "Plan," the WEB Plan, or the Life Insurance Plan. [Doc. 4-1 at 12-18.]

To establish a claim for breach of the defendant's fiduciary duty based on alleged misrepresentations, the plaintiff must show: "(1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these representations constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to his detriment." *Moore*, 458 F.3d at 433 (citing *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002)).  A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire. *Moore*, 458 F.3d at 433. In addition, a plaintiff's reliance on the misrepresentation must be reasonable. *Id.*

Under this standard, the Court finds that the Plaintiffs have sufficiently stated a claim for relief in Count V as to the WEB Plan and the Life Insurance Plan.  First, in their Complaint, the Plaintiffs say that the Defendants acted in their fiduciary capacities when they published the 1999 Newsletters.[6]  In addition, the Plaintiffs claim that the Newsletters misrepresented that the benefits under the WEB Plan benefits would be "for their life." [Doc. 1-5 at 7.]  Moreover, the Plaintiffs allege that the Newsletters provided for a guaranteed rate of payment and benefit floor under the Life Insurance Plan  [Doc. 1-5 at 6.]  At this stage of the litigation, both of these allegations are sufficient to state a claim that Newsletters materially misrepresented the guaranteed nature of the plan benefits. Finally, the Plaintiffs allege that they "relied on the Newsletters and agreed, to their detriment, to retire early." [Doc. 1 at 5.]

The Defendants, citing *Sprague*, say that "justifiable reliance cannot be found where clear, unambiguous terms of the plan exist." [Doc. 4-1 at 17.]  The Sixth Circuit, however, has specifically

---

[6]Although the Defendants say this is a "bold assertion," they provide no further challenge to the Plaintiffs' claim that they are fiduciaries under the Plans. [Doc. 4-1 at 15.]

Case No. 1:09-cv-1011
Gwin, J.

rejected this argument in the fiduciary duty context when the employer makes the statements of its own accord, noting, "*Sprague* does not stand for the proposition that a reservation of rights provision insulates an employer from liability for a breach of its fiduciary duty under ERISA when the employer disseminates materially false or misleading information *on its own initiative* about future benefits of a plan." *Pirelli Armstrong*, 305 F.3d at 455 (emphasis added) (contrasting cases where employer provides misleading answer to employee inquiry or where employer fails to make required forecast of future benefits).

Similarly, because the Defendants here published the 1999 Newsletters on their own initiative, the Plans' reservation of rights language does not render the Plaintiffs' reliance unreasonable as a matter of law. Therefore, the Court finds that the Plaintiffs have sufficiently stated a claim for breach of fiduciary duty as to the WEB and Life Insurance Plans. Accordingly, the Court **DENIES** the Defendants' motion to dismiss Count V.

*III.E. Count VI: Equitable Estoppel*

Finally, the Plaintiffs say in Count VI of their Complaint that if the 1999 Newsletters do not constitute separate ERISA plans or plan amendments, the Defendants are nevertheless equitably estopped from denying the Plaintiffs fixed lifetime benefits.[7/] [Doc. 1 at 11-12.] Responding, the Defendants say that estoppel cannot be applied to vary the terms of unambiguous plan documents and that the Plaintiffs cannot show reasonable reliance on any alleged misrepresentations. [Doc. 4-1 at 18-19.]

The Sixth Circuit recognizes claims of estoppel under ERISA. *See Moore v. LaFayette Life*

---

[7/]To the extent Count II attempts to plead a claim for *promissory* estoppel under ERISA, the Sixth Circuit has held that the two forms of estoppel are not treated differently in this context. *See Sprague*, 133 F.3d at 403 n.13. Therefore, this Court considers the Plaintiffs' promissory estoppel arguments together with Count VI.

-17-

Case No. 1:09-cv-1011
Gwin, J.

*Ins. Co.*, 458 F.3d 416, 428 (6th Cir. 2006) ("This Court has recognized that promissory estoppel is a viable theory in ERISA welfare benefit actions.") (citing *Sprague*, 133 F.3d at 403). A plaintiff bringing an estoppel claim under ERISA must show: (1) conduct or language amounting to a representation of a material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting estoppel must be unaware of the true facts; and (5) the party asserting estoppel must reasonably or justifiably rely on the representation to his detriment. *Moore*, 458 F.3d at 428.

As a threshold matter, however, the Sixth Circuit has repeatedly held that a party cannot estop the application of an unambiguous written provision in an ERISA plan. *See Zirnhelt v. Mich. Consol. Gas Co.*, 526 F.3d 282, 288 (6th Cir. 2008) ("[T]he principles of estoppel cannot be applied to vary the terms of unambiguous plan documents . . . ."); *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 431 (6th Cir. 2007) ("A party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party.") (internal quotations omitted); *Moore*, 458 F.3d at 449 (affirming trial court's dismissal of plaintiff's estoppel claim where plaintiff did not claim there was ambiguity in the plan documents); *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003) ("Moreover, to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves."); *Sprague*, 133 F.3d at 404 (same).

Applying this principle, the Sixth Circuit has repeatedly upheld the dismissal of estoppel claims on a motion to dismiss where plaintiffs fail to plead that the underlying plan documents are ambiguous. *See Moore* 458 F.3d at 449; *Marks*, 342 F.3d at 456 (granting motion to dismiss

-18-

Case No. 1:09-cv-1011
Gwin, J.

employee's estoppel claim where employee alleged that employer made fraudulent representations that conflicted with plan documents); *Putney v. Med. Mut. of Ohio*, 111 Fed. App'x 803, 807 (6th Cir., Sept. 10, 2004) ("[Plaintiff] did not plead in his complaint, nor did he present any evidence before the district court that the Plan was in any way ambiguous. The district court did not err in holding that Plan is not, in fact, ambiguous, and in dismissing [Plaintiff's] promissory estoppel claim under Rule 12(b)(6).") Similarly, in this case, the Plaintiffs do not to allege that the WEB Plan and Life Insurance Plan documents themselves are ambiguous as to Ohio Farmers' right to amend or terminate benefits. Therefore, the Plaintiffs fail to state a claim for estoppel under ERISA.

Moreover, even if the Plaintiffs made such an allegation, this Court would nevertheless dismiss the claim because the terms of the plan documents do not permit an inference of ambiguity in Plaintiffs' favor. "Whether plan documents are clear is an objective inquiry." *Smiljanich v. Gen. Motors Corp.*, 302 Fed. App'x 443, 448 (6th Cir. Dec. 5, 2008) (citing *Sprague*, 133 F.3d at 404); *see also Putney*, 111 Fed. App'x at 807 (holding district court could properly determine plan ambiguity on motion to dismiss).

Here, the SPDs provide: "[the Company] reserves its right to amend or terminate the Plan at any time," [Doc. 4-2 at 14], and "The Plan Administrator reserves full authority, at its sole discretion, to terminate, suspend, withdraw, reduce, amend or modify the Plan, in whole or in part, at any time, without prior notice." [Doc. 4-3 at 53.] These provisions unambiguously reserve Ohio Farmers' right to amend or terminate the plans, as it did in 2008.

The Plaintiffs in this case cite *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134 (6th Cir. 1988), as standing for the proposition that a *written* promise regarding benefits permits a plaintiff to state a viable estoppel claim. This argument reads *Edwards* too broadly. In that case,

Case No. 1:09-cv-1011
Gwin, J.

the plaintiff employee relied on language in the employer's summary plan booklet that directly contradicted language in the plan itself.  Relying on Sixth Circuit precedent that contradictory statements in a summary plan document control, the court held that the employees reasonably relied on the summary.[8/]  851 F.2d at 136-37.

In this case, the Plaintiffs do not rely on the summary plan documents, personal letters, or personal reports of their accrued benefits.  Instead, they rely on provisions in two company newsletters.  In light of these facts and more recent case law in this circuit, the Court declines to read *Edwards* as broadly as the Plaintiffs suggest. *See Sprague*, 133 F.3d at 404 (holding that plaintiffs' estoppel claims failed as matter of law even though plaintiffs alleged that various *written statements* contained material misrepresentations).

Similarly, the Plaintiffs rely on the Second Circuit's decision in *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76 (2d Cir. 2001) (reversing grant of summary judgment for employer when employees provided evidence of "extraordinary circumstances" on ERISA estoppel claim).  Although both the Second Circuit and Sixth Circuit recognize claims for estoppel under ERISA, they employ differing standards and analyses. *Compare Devlin*, 274 F.3d at 85 (elements of estoppel are "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced," along with "extraordinary circumstances") *with Moore, supra,* 458 F.3d at 428.

Moreover, as to whether language indicates an intent to vest, the Second Circuit has explicitly adopted a less onerous standard than that of the Sixth Circuit. *See Devlin*, 274 F.3d at 83 (rejecting

_____

[8/]Although the court recognized that the employee had also relied on a benefits letter and benefits statements, those facts only made the case "more convincing," and did not provide an independent source for plaintiff's claim. *Edwards*, 851 F.2d at 137.

-20-

Case No. 1:09-cv-1011
Gwin, J.

"clear and express language" standard adopted by Sixth Circuit in *Sprague*)  Thus, even though the

facts of *Devlin* align favorably with the Plaintiffs in this case, the standards employed by the Second

Circuit differ too greatly from those of the Sixth Circuit to be of much persuasive value here.

Therefore, because the Plaintiffs do not allege the ambiguity of the amendment and

termination provisions of the WEB and Life Insurance Plans, they cannot state an ERISA estoppel

claim.  Accordingly, this Court **GRANTS** the Defendants' motion to dismiss Count VI and

**DISMISSES** the claim with prejudice.

### IV. Conclusion

For the foregoing reasons, this Court **GRANTS IN PART** and **DENIES IN PART** the

Defendants' motion to dismiss.  Specifically, the Court **GRANTS** the motion as to Counts I, II, III

& VI.  The Court **DENIES** the motion as to Counts IV & V.  Finally, the Court **GRANTS** the

unopposed motion to dismiss all counts as to Defendant Westfield Insurance Companies only.

IT IS SO ORDERED.


Dated: November 13, 2009                        s/         *James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE