UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
GEORGE GRIFFITHS, *et al.*, :
: CASE NO. 1:09-CV-1011
Plaintiffs, :
:
vs. : FINDINGS OF FACT AND
: CONCLUSIONS OF LAW GRANTING
OHIO FARMERS INS. CO., *et al.*, : JUDGMENT FOR DEFENDANTS
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this employee benefits and breach of fiduciary duty case, Plaintiffs George Griffiths and Betty Collett, on behalf of a class of individuals who retired from Defendant Ohio Farmers under a 1999 Special Retirement Benefit program, say that Ohio Farmers breached its fiduciary duty to the retirees by inducing them to retire early with false promises of certain lifetime profit-sharing and life insurance benefits under the Westfield Earnings Bonus Plan ("Profit Sharing Plan") and Ohio Farmers Insurance Co. Life Insurance Plan ("Life Insurance Plan"). Responding, Ohio Farmers largely argues it did not breach its fiduciary duty because Plaintiffs could not reasonably rely upon Ohio Farmers' promise of lifetime benefits because Plaintiffs were aware that Ohio Farmers had a right to amend its retiree benefits program.

The matter went to trial before this Court and an advisory jury on July 19, 2010. On July 20, 2010, the advisory jury gave a verdict in favor of Ohio Farmers, ruling in Ohio Farmers' favor on

Case No. 1:09-CV-1011
Gwin, J.

all five interrogatories. After observing the demeanor of the witnesses and considering the parties' evidence and arguments, the Court grants judgment for Defendant Ohio Farmers and against Plaintiffs and class members. The Court makes the following findings of fact and conclusions of law.

### I. Findings Of Fact

Plaintiffs George Griffiths and Betty Collett and class members worked for Defendant Ohio Farmers until their retirement in 1999. [Trial Tr. vol 1, 206:26, 237:25, July 19, 2010, Doc. 117.] Plaintiffs and class members participated in Ohio Farmers' Life Insurance Plan and Profit Sharing Plan. Ohio Farmers served as the Plan Administrator and acted in a fiduciary capacity both when it communicated with participants regarding the Plans and when it administered the Plans.

In 1999, Defendant Ohio Farmers sought to reduce its management head count. [Trial Tr. vol 1, 88:18; Pl.'s Ex. 13.] To encourage manager retirements, it used a two part strategy—it told employees that it would reduce retiree benefit under the Profit Sharing and Life Insurance Plans for those retiring after January 1, 2000 and joined a statement implying that employees retiring before January 1, 2000 would not suffer the same cuts. [Pl.'s Ex. 13.] In conjunction with its announcement that it would cut future retiree benefits, the company offered a 1999 Special Retirement Benefit—a buy-out package to encourage early retirement—to employees near retirement age. [Pl.'s Ex. 13.]

Generally, the 1999 Special Retirement Benefit included a lump-sum pension payment equal to six months' gross salary, vested pension benefits, continued health benefits, a one-time accumulated pre-retirement vacation benefit consisting of a number of months of vacation based on an employee's years of service, uncapped profit sharing benefits, and continued group life insurance

Case No. 1:09-CV-1011
Gwin, J.

death benefits with a lesser reduction percentage from age 66 to 75. [Pl.'s Ex. 14.] Certain employees also negotiated side deals—for example, Plaintiff Collett received an increased pension and Plaintiff Griffiths received a country club membership. [Collett Dep. 75:11 - 77:15, Dec. 8, 2009; Griffiths Dep. 8:14 - 9:9, Dec. 8, 2009.]

First, under the Profit Sharing Plan, the sole difference between the Profit Sharing Plan under the 1999 Special Retirement Benefit program and the Profit Sharing Plan for employees retiring after January 1, 2000 was the percentage cap on the profit sharing allocation. [Pl.'s Ex. 14.] Unlike employees who retired after January 1, 2000, the 1999 Special Retirement Benefit retirees were not limited to a maximum annual profit sharing allocation of 20% of their salary. [Pl.'s Ex. 14.] Before the change for employees who retired after January 1, 2000, employees averaged profit sharing of 20% - 25% of their base salary and occasional profit sharing payments as high as 50% of their base salary. [Trial Tr. vol 1, 88:5-23.] Under the Profit Sharing Plan, no profit sharing payments were made in 2000 and 2001 when Farmers did not achieve a profit. [Trial Tr. vol 1, 88:5-23, 238:19-21.]

Although recognizing that Ohio Farmers committed in 1999 that employees "who retire prior to January 1, 2000 will participate in the Profit Sharing Plan for their life . . . ," [Pl.'s Ex. 14,] Ohio Farmers says this lifetime commitment is trumped by its retained right to amend or terminate the Plan. The 1999 Profit Sharing Plan document said: "The Company shall have the right to amend, curtail or revoke this plan in whole or in part at any time and from time to time." [Def.'s Ex. 9.] The Profit Sharing Plan document that became effective January 1, 2000 similarly said: "The Company shall have the right to amend or terminate this Plan in whole or in part at any time . . . ." [Pl.'s Ex. 22.]

Plaintiffs and class members received these Profit Sharing Plan documents. [Trial Tr. vol

Case No. 1:09-CV-1011
Gwin, J.

1, 225:12-16, 239:17-25.] Plaintiffs testified that they "were well aware of the company's ability to modify amend or terminate their benefit plans," [Trial Tr. vol 1, 250:3-6,] and that the documents they received said "that retirees who retired under the '99 Plan would receive profit sharing for lifetime until amended or terminated." [Trial Tr. vol 2, 20:11-15, July 20, 2010.]

In soliciting early retirements, Ohio Farmers said early retirees would not suffer the same reduction in benefits that employees who retired after January 1, 2000 would face. Unlike employees who retired after January 1, 2000, whose life insurance would decrease 10% annually from age 66 to age 75, with a minimum $15,000 benefit, employees who retired before January 1, 2000 would have their life insurance benefit decrease 5% from age 66 to age 75, after which the benefit would be one-half of the amount immediately prior to retirement. [Pl.'s Ex. 14; Trial Tr. vol 1, 149:24-150:4.] Because Ohio Farmers' life insurance benefit was approximately two-and-a-half times the employee's salary, the life insurance benefit for an employee ten years retired who, for example, had a salary of $100,000 at retirement would go from $125,000 at age 75 to $15,000 at age 75.

Regarding the life insurance benefit, Ohio Farmers did not change its right to amend or terminate the Life Insurance Plan. In 1999, the Life Insurance Plan document said: "Your accidental death insurance will cease . . . [t]he date the Plan is terminated [or amended] by the Company." [Def.'s Ex. 12.] Beginning May 1, 2003, the Life Insurance Plan document said: "The Company shall have the right at any time . . . to amend [or terminate this Plan]." [Def.'s Ex. 13.]

In addition to the underlying Plan documents, each Ohio Farmers employee who was eligible for the 1999 Special Retirement Benefit received a portfolio entitled "Information Concerning a Special Retirement Benefit" (the "Portfolio") on June 1, 1999. [Pl.'s Ex. 14.]  Ohio Farmers

-4-

Case No. 1:09-CV-1011
Gwin, J.

individualized these Portfolios for each eligible employee and included individual retirement calculations. [Trial Tr. vol 2, 16:22-24, 312:8-13.]

The Portfolio said that 1999 Special Retirement Benefit employees and all employees retiring after January 1, 2000 would "participate for their lifetime" in the Profit Sharing Plan. [Pl.'s Ex. 14.] On the same page as this representation that profit sharing would continue for life, the Portfolio also said: "The Profit Sharing Plan continues to include a provision by which the Company may curtail or revoke the plan at any time." [Pl.'s Ex. 14.] In using the term "lifetime," Ohio Farmers created obvious conflict regarding its contrary retention of a right to amend. Ohio Farmers would have been clearer if it had said that it would offer profit sharing for the foreseeable future, instead of promising lifetime profit sharing.

The Portfolio told eligible employees that the 1999 Special Retirement Benefit program was voluntary. [Pl.'s Ex. 14; Trial Tr. vol 2, 15:13-18] Potential retirees had the opportunity to consult with representatives from Ohio Farmers' human resources/benefits department to ensure that they fully understood the program. [Pl.'s Ex. 14; Trial Tr. vol 1, 211:2-10.] Ohio Farmers held both general and individual meetings regarding the 1999 Special Retirement Benefit program at which eligible employees could ask questions and gather additional information regarding the program. [Trial Tr. vol 1, 201:18-22.]

In addition to the Portfolio, Ohio Farmers distributed three newsletters to all employees in May, June, and September 1999. [Trial Tr. vol 1, 169:16-18; Pl.'s Ex. 13; Pl.'s Ex. 16; Pl.'s Ex. 20.] As described above, these newsletters promised better retiree life insurance and promised "[e]mployees who retire prior to January 1, 2000, will participate in the Profit Sharing Plan for their life." [Pl.'s Ex. 13.] But the newsletters do not explicitly state that future revisions were not

-5-

Case No. 1:09-CV-1011
Gwin, J.

possible.

Of 168 employees eligible for the 1999 Special Retirement Benefit, 99 accepted. [Trial Tr. vol 2, 37:18-19.] Plaintiffs and class members retired in 1999 under the 1999 Special Retirement Benefit program.

Ohio Farmers terminated the Profit Sharing Plan for all employees and retirees on December 31, 2007 and amended the Life Insurance Plan for all employees and retirees on January 1, 2009. [Pl.'s Ex. 35; Pl.'s Ex. 39.] With regard to the Profit Sharing Plan, Ohio Farmers ended its profit sharing for retirees and general employees and replaced it with a management bonus plan. [Trial Tr. vol 1, 130:4-7.] Regarding the promised retiree life insurance, Ohio Farmers significantly cut benefits for those who retired under the 1999 Special Retirement Benefit. Until such time, Plaintiffs and class members received all benefits under the plans. [Trial Tr. vol 1, 228:1-6.] Plaintiffs continue to receive all other 1999 Special Retirement Benefit program benefits which they are entitled. [Trial Tr. vol 1, 228:1-6.]

## II. Conclusions of Law

On May 1, 2009, Plaintiffs filed a six-count Complaint saying that Ohio Farmers breached its fiduciary duty to the 1999 Special Retirement Benefit retirees when it induced them to retire early by falsely promising certain lifetime profit-sharing and life insurance benefits under the Profit Sharing Plan and Life Insurance Plan. [Doc. 1.] Before trial, the Court dismissed all counts except Count V, which asserts a claim for breach of fiduciary duty under Section 404 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104. [Doc. 39.]

"[T]he duties charged to an ERISA fiduciary are the highest known to the law." *Chao v. Hall Holding Co.*, 285 F.3d 415, 426 (6th Cir. 2002) (internal quotation omitted). A fiduciary breaches

Case No. 1:09-CV-1011
Gwin, J.

his duty by providing plan participants with materially misleading information, "regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002) (quoting *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 547 (6th Cir.1999)). "Misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty." *Pirelli Armstrong*, 305 F.3d at 449 (internal quotations omitted).

Ohio Farmers conceded it was acting in a fiduciary capacity when it made the challenged misrepresentations to Plaintiffs. Thus, to establish breach of fiduciary duty, the Plaintiffs needed to show that: (1) Ohio Farmers made a misrepresentation; (2) the misrepresentation was material; (3) Plaintiffs actually relied on the misrepresentation; (4) Plaintiffs' reliance was reasonable; and (5) as a result of that reliance, Plaintiffs suffered a detriment. *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 433 (6th Cir. 2006). A misrepresentation is "material" if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire. *Id*.

Count V of the Complaint alleges that Ohio Farmers' May 1999 and June 1999 newsletters misled Plaintiffs. [Doc. 1.] Plaintiffs say the newsletters led them to believe they would continue to participate in the Profit Sharing Plan for their lifetime and would have Life Insurance Plan death benefits at least 125% of their final salary—not the $15,000 minimum benefit Ohio Farmers changed to. But for these alleged misrepresentations, Plaintiffs say, they would not have retired.

This case involves inherently factual determinations—was Ohio Farmers' misrepresentation that it would continue the profit sharing and life insurance benefits material; and did Plaintiffs

Case No. 1:09-CV-1011
Gwin, J.

reasonably rely upon these misrepresentations, especially when Plaintiffs knew Ohio Farmers had a right to take back its promises through amendments to the Plans? Plaintiffs showed strong evidence that Ohio Farmers misrepresented that the 1999 Special Retirement Benefit retirees would receive lifetime profit sharing and life insurance benefits. But Defendants showed strong evidence that Plaintiffs knew Ohio Farmers kept a right to go back on its promises by amending the Plans. The advisory jury weighed these claims and defenses.

The advisory jury ruled in favor of Ohio Farmers and against Plaintiffs on all five interrogatories:

> **INTERROGATORY NO. 1**
> Did the Plaintiffs establish by a preponderance of the evidence that Defendants made a misrepresentation to Plaintiffs or failed to inform the Plaintiffs when the trustee knew the failure to inform could be harmful?
> **ANSWER: NO**
>
> **INTERROGATORY NO. 2**
> If you believe that Defendants made an actual misrepresentation to Plaintiffs or failed to inform the Plaintiffs when the trustee knew the failure to inform could be harmful, was that misrepresentation material?
> **ANSWER: NO**
>
> **INTERROGATORY NO. 3**
> Did the Plaintiffs establish by a preponderance of the evidence that they relied on any misrepresentation or failure to disclose by Defendants?
> **ANSWER: NO**
>
> **INTERROGATORY NO. 4**
> If you believe that Plaintiffs relied on Defendants' misrepresentation or failure to disclose, was that reliance reasonable?
> **ANSWER: NO**
>
> **INTERROGATORY NO. 5**
> If you believe that Plaintiffs relied on Defendants' misrepresentation or failure to disclose, was that reliance to their detriment?
> **ANSWER: NO**

[Doc. 114.]

Case No. 1:09-CV-1011
Gwin, J.

Ohio Farmers acknowledges that it made the representations regarding retiree participation in profit sharing and regarding retiree life insurance benefits to solicit early retirements. However, Ohio Farmers argues—and argued to the jury—that Plaintiffs knew it could "amend, curtail or revoke this Plan in whole or in part at any time." [Pl.'s Ex. 6.] Ohio Farmers says its promise to pay retirees was trumped by its retention of a right to amend. In effect, Ohio Farmers says it promised to pay greater life insurance benefits and profit sharing—until it changed its mind. And Plaintiffs knew that Ohio Farmers had kept the right to change its commitments—although they mistakenly thought Ohio Farmers would keep its promises.

As advised by the jury, Plaintiffs could not reasonably rely upon Ohio Farmers' misrepresentations of lifetime participation in the Profit Sharing Plan or Life Insurance Plan. The Court, therefore, finds in favor of Ohio Farmers and against Plaintiffs.

First, considering breach of fiduciary duty elements (1) and (2)—material misrepresentation—Ohio Farmers misrepresented that the profit sharing and life insurance benefits would be lifetime benefits. But counterbalancing this, Ohio Farmers told the Plaintiffs—and the Plaintiffs knew—that Ohio Farmers could change these promises so the misrepresentation was not material. As I and other courts and commentators have criticized before, the Sixth Circuit allows employers to change seemingly unchangeable promises of employee benefits.[1] "[E]mployers are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998) (internal quotation omitted). Under *Sprague*, even the clearest promises of lifetime benefits will have no effect if the employer reserves the right to amend or terminate the benefits provided thereunder. *See id*.

---

[1] *See e.g.*, *Griffiths v. Ohio Farmers Ins. Co.,* 2010 WL 1032641, at *6 (N.D. Ohio Mar. 17, 2010).

Case No. 1:09-CV-1011
Gwin, J.

Here, Plaintiffs admitted they signed the 1999 Special Retirement Benefit election forms contained in the Portfolio after reviewing, considering, and understanding the information contained in the plan documents. [Trial Tr. vol 1, 172:7 - 175:2.] And the Portfolio expressly reserved the right to amend, modify, or terminate the benefits plans. [Trial Tr. vol 1, 172:7 - 175:2.]

To be sure, the May 1999 and June 1999 newsletters do not say anything about Ohio Farmers retention of a right to amend—that is, go back on—its promise of lifetime benefits for 1999 Special Retirement Benefit retirees. But under the Sixth Circuit's *Sprague* decision, Ohio Farmers Plan amendment provisions are enough. Against this Sixth Circuit *Sprague* backdrop, the word "lifetime," when combined with the reservation of rights provisions in the Portfolio, mean that the benefit plan participant has lifetime benefits subject to amendment or termination. *See In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 58 F.3d 896, 903-04 (3d Cir. 1995) (finding that "[a]n employer who promises lifetime medical benefits, while at the same time reserving the right to amend the plan under which those benefits were provided, has informed plan participants of the time period during which they will be eligible to receive benefits *provided* the plan continues to exist" and "[o]ther courts have reached the same conclusion, recognizing that an employer can qualify the provision of 'lifetime' benefits by reserving the right to terminate the plan under which those benefits are provided" (emphasis in original)).

Furthermore, Plaintiffs did not reasonably rely to their detriment on Ohio Farmers' misrepresentation. Of course, an ERISA fiduciary must provide "complete and accurate information" to plan beneficiaries. *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 454-55 (6th Cir. 2002). However, under *Sprague* a beneficiary's reliance upon an unconditioned promise of lifetime benefits cannot be reasonable if it is inconsistent with terms of plan documents furnished

-10-

Case No. 1:09-CV-1011
Gwin, J.

to the beneficiary. *Id.* at 404.

In this case, as set forth above, the Profit Sharing Plan and Life Insurance Plan, and their plan descriptions, expressly reserved the right to amend or terminate at any time. Given *Sprague*, the Plaintiffs cannot claim a vested right—that is, an unalterable lifetime profit sharing and life insurance right—to a benefit that can be taken away by the specific terms of the plans. *See Noe v. PolyOne Corp.*, 520 F.3d 548, 552 (6th Cir. 2008). Moreover, under *Sprague*, the Plan disclosures satisfied Ohio Farmers' duty to provide information. With the Portfolio given to all 1999 retirees, Ohio Farmers disclosed that it retained the ability to amend or terminate the Profit Sharing Plan and Life Insurance Plan.

Finally, Plaintiffs and class members suffered no detriment because the benefit plans were always subject to amendment or termination. Plaintiffs and class members, therefore, did not reasonably rely on any material misrepresentations to their detriment.

Thus, the Court finds insufficient evidence that Plaintiffs reasonably relied upon Ohio Farmers promise of lifetime benefits. Accordingly, the Court enters judgment in favor of Ohio Farmers and against Plaintiffs.


Dated: October 1, 2010                       *s/     James S. Gwin*
                                                                               JAMES S. GWIN
                                                                               UNITED STATES DISTRICT JUDGE